# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **JEFFREY S. NELSON**, | Civil No. 04-192 (MJD/JGL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| **STATE OF MINNESOTA, et al.**, | |
| Defendants. | |

Jeffrey S. Nelson, pro se

David A. Rowley and Barbara Berg Windels, Esqs., Assistant Attorneys General, State of Minnesota, on behalf of Defendants

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter is before the undersigned Chief Magistrate Judge of District Court on Defendants' Motion for Summary Judgment. Plaintiff Jeffrey S. Nelson brought his underlying Complaint pursuant to 42 U.S.C. § 1983 alleging deprivations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, it is recommended that Defendant's Motion for Summary Judgment be granted and Plaintiff's Complaint be dismissed with

prejudice.

## I. BACKGROUND

Plaintiff is a civilly committed patient of the Minnesota Sex Offender Program in Moose Lake, Minnesota. The individual defendants are officials and employees of the State of Minnesota and are each sued in their official and individual capacities.[1] Plaintiff's claims arise out of events occurring on January 31, 2003, and October 31, 2003, during which patients at Moose Lake were required to undergo strip searches. Plaintiff alleges violations of his Fourth Amendment right to be free from unreasonable searches and seizures.[2] Complaint, ¶¶ 27, 30, 32, 36; [Docket No. 1]. Plaintiff

---

[1] In addition to the State of Minnesota, the defendants in this case are Kevin Goodno, Commissioner of the Minnesota Department of Human Services; Mike Tessneer, Chief Operating Officer of Minnesota State Operated Services; Larry TeBrake, Acting Director of the Minnesota Sex Offender Program; Paula Johnson, Security Director of the Minnesota Sex Offender Program; Steven Huot, Clinical Director of the Minnesota Sex Offender Program; Tom Lundquist, Assistant Clinical Director of the Minnesota Sex Offender Program; Jerry Zimmerman, Acting Site Director of the Minnesota Sex Offender Program; Kirk Davis, Unit Director of the Minnesota Sex Offender Program; Randy Valentine, Patient Advocate of the Minnesota Sex Offender Program; Barry Anderson, Assistant Group Supervisor of the Minnesota Sex Offender Program; John Mandernach, Assistant Group Supervisor of the Minnesota Sex Offender Program; and Thorn Torgerson, Security Counselor of the Minnesota Sex Offender Program.

[2] Plaintiff also asserts violations of the Fourteenth Amendment. Complaint, ¶¶ 30, 32, 36. While Plaintiff does not further specify the alleged violation in his Complaint, he does further explain his claim in the equal protection context in his responsive memorandum. See Mem. in Opposition, p.

seeks special and general damages, as well as punitive damages.

The mission of the Minnesota Sex Offender Program ("Program") is to evaluate, manage, rehabilitate, and facilitate community transition of sex offenders who have been civilly committed under the Sexual Psychopathic Personality ("SPP") or Sexually Dangerous Person ("SDP") statute. Harry Aff., ¶ 3; [Docket No. 19]. The Program operates in two locations: the Moose Lake facility and the Minnesota Security Hospital in St. Peter ("St. Peter"). Id., ¶¶ 4-5. Plaintiff has resided at the Moose Lake facility since May 9, 1996, and was committed as a sexual psychopathic personality on September 26, 1996. Johnson Aff., ¶ 4; [Docket No. 21].

On January 24, 2003, a patient at Moose Lake received a cell phone bill in the mail. Id., ¶ 6. Upon being questioned, the patient admitted owning a cell phone, but claimed that his girlfriend had possession of it. Id. A decision to search the patient's room was made, and although no phone was found, staff suspected that it may have been passed to a second patient during a conversation held between the two while the room was being searched. Id., ¶ 7. A search of the second patient's room and storage bin located outside the room ultimately turned up a cell phone and a baggie of marijuana. Id. That

---

19-20, 24-25.

same day, Paula Johnson ("Johnson"), the Security Director for the Program at Moose Lake, contacted Rick Harry, then the Chief Operating Officer of the Program for the State of Minnesota, and informed him that a cell phone[3] and marijuana were discovered in a storage bin belonging to a patient.  Harry Aff., ¶¶ 2, 8; Johnson Aff., ¶ 2, 6.  On January 27, 2003, Moose Lake was locked down, and a facility-wide search of patient rooms was commenced in conjunction with unclothed body searches of patients.  Johnson Aff., ¶ 16.

On October 28, 2003, a patient gave a staff member a cell phone case that he had found.  Id., ¶ 17.  Johnson discussed the finding of the cell phone case with Larry TeBrake, the Site Director at St. Peter, and, at the time, the Interim Site Director for Moose Lake.  Id., ¶ 19; TeBrake Aff., ¶ 1; [Docket No. 20].  Based on the suspicion that a cell-phone was present in the facility, and the inability to narrow the scope of the patients who might be in possession of the cell phone, Johnson again recommended a facility-wide room search accompanied by unclothed body searches of patients.  Johnson Aff., ¶ 19.

---

[3]     Cell phones are considered contraband at the facility because of their possible use for unauthorized contacts, including calls to potential victims, and because the internet and photo-taking capabilities of many cell phones could be used as a means of obtaining pornography and as a tool to breach both institutional and individual employee security.  Johnson Aff., ¶¶ 12-14.

According to Johnson, the unclothed body search teams consisted of groups of two male staff members. Id., ¶ 23. Female staff were allowed to conduct room searches, but not unclothed body searches. Id. The search teams were instructed that patients must not be physically forced to comply with searches and to explain to patients that the search was for contraband. Id., ¶¶ 22-23. When conducting an unclothed body search, search team members were instructed to first ask the patient if they would consent to the search. Id.., ¶ 24. If the patient consented, the patient was taken to a large, private bathroom and the door was closed for privacy. Id., ¶ 24. While the search team stood about five to eight feet from the patient, one search member instructed the patient on what to do, while the other member conducted a pat search of the patient's clothing. Id. ¶ 25.

During the search, the patient was to be asked to run his fingers through his hair, show his armpits, bottom of his feet, and spread his fingers. Id. The patient was next asked to open his mouth, then lift his genitals, and finally to turn, bend over and spread his buttocks. Id. Once all required areas were visually searched, the patient was told that he could dress, and once dressed, was escorted back to his room. Id. Search team members were instructed not to touch the patient during the search unless the patient exhibited threatening or aggressive behaviors that required physical restraint.

Id., ¶ 26.

Plaintiff alleges that he was searched by Defendants Barry Anderson and Thorn Torgerson. Complaint, ¶ 27. Plaintiff states that he was strip searched, after being coerced out of his room by being shown a copy of Minnesota Statute § 243.55[4] and by being threatened with continued lock down until he complied with the search. Id., ¶¶ 23, 27, 32. Plaintiff states that he "was requested to grab his genitals and lift them, to turn around, bend over and spread the cheeks of his buttocks, and to open his mouth while state employees of the regional treatment program searched these cavity areas." Id., ¶ 20. Plaintiff states that as a result of the alleged violations of his constitutional rights, that he "suffered humiliation, pain, distress, anguish , anxiety, injury and pain and suffering and emotional distress[.]" Id., ¶ 35.

## II.   DISCUSSION

As noted above, plaintiff alleges violations of his constitutional rights under the Fourth and Fourteenth Amendments. Plaintiff specifically claims that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the unclothed body searches conducted

---

[4] This statute provides in relevant part: "The head of any state hospital may, under such rules prescribed by the commissioner of human services, provide for the search of all persons admitted into the hospital or upon the hospital grounds thereof." Minn. Stat. § 243.55, subd. 2 (2000).

by search team members in January 2003, and October 2003. Plaintiff did not specifically describe the alleged Fourteenth Amendment violation in his complaint, but he did assert for the first time in his responsive pleading an equal protection violation under the Fourteenth Amendment.

Defendants argue that: 1) plaintiff's claims for damages against the State of Minnesota and all defendants in their official capacities are barred by the Eleventh Amendment; 2) plaintiff's claims against Defendant State of Minnesota under 42 U.S.C. § 1983 is invalid because the "State of Minnesota" is not a person; 3) plaintiff's claims against all defendants in their individual capacities should be dismissed because defendants are entitle to qualified immunity; 4) plaintiff's claims are barred by Minnesota's Tort Claims statute; and 5) the undisputed facts show that defendant's did not violate Plaintiff's Fourth or Fourteenth Amendment rights.

The Court notes that plaintiff is not the only patient at Moose Lake to file suit relevant to the searches of January 31, 2003, and October 31, 2003. In addition to plaintiff's case, a number of other cases were filed in this district. See, e.g., Nicolaison v. Goodno, No. 04-CV-617 (RHK/JSM); Serna v. Goodno, No. 04-CV-615 (JMR/SRN); Custer v. Minnesota, No. 04-CV-607 (PAM/RLE); Brown v. State, No. 04-CV-193; Benson v. Minnesota, No. 04-CV-165 (ADM/FLN); Clouthier v. Minnesota, No. 04-CV-144 (PAM/RLE); Jack v.

State, 04-CV-106 (JNE/AJB); McDeid v. State, No. 04-CV-11 (JNE/FLN).  Each case contains nearly identical claims, with only minor variation in certain named defendants.  In every case but Custer, where the plaintiff's motion for voluntary dismissal was granted, the defendants' motions for summary judgment have either been granted or a report and recommendation is pending which recommends that defendants' motion for summary judgment be granted.

### A.     **Summary Judgment Standard**

Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. Catrett, 477 U.S. 317, 322-23 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The Court must view the evidence, and the inferences drawn from the evidence, in the light most favorable to the

nonmoving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327.

### B.  Eleventh Amendment Immunity

Defendants assert that plaintiff's official capacity claims seeking money damages are barred under the Eleventh Amendment. In an action under 42 U.S.C. § 1983, a public servant may be sued in an official capacity, and individual capacity, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). A suit against a public employee in that person's official capacity is merely a suit against public employer. Id. (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). The Eleventh Amendment protects the State and the arms of the State from liability for damages in a Section 1983 action. See Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1438 (8th Cir. 1996) (stating that a state agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in judgment against the state itself). Such immunity also extends to state officials who are named as individual defendants acting in their official capacity. Id. When the action is against the office and not the person, there

is no difference from a suit against the State itself.  See Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

The Minnesota Sex Offender Program at Moose Lake is operated under the auspices of the Minnesota Department of Human Services, itself a subdivision of the State of Minnesota.  See Goodno Aff., ¶¶ 3-4; [Docket No. 17].  The Program is thus entitled to Eleventh Amendment immunity as a political subdivision of the state.  Hadley, 76 F.3d at 1438.  The individual defendants are likewise entitled to immunity, because they are officials employed by the state.  Id.  Plaintiff does not allege any waiver of Eleventh Amendment immunity by any of the defendants, and a review of the record does not indicate any such waiver by the state.  See Faibisch v. Univ. of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002) ("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").  The Court finds that the claims against the State of Minnesota and all individually named defendants are barred by the Eleventh Amendment to the extent plaintiff seeks monetary damages for actions taken in an official capacity.

### C.     **Qualified Immunity**

The individual defendants in this matter argue that they should be granted summary judgment on qualified immunity grounds.  The doctrine

of qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which is not clearly established as unlawful at the time the conduct occurred.  See Saucier v. Katz, 533 U.S. 194, 204-06 (2001).  A state officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law."  Hafer, 502 U.S. at 25.  Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages.  Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985) (citing Harlow v. Fitzgerald, 502 U.S. 224, 229 (1991)).  The doctrine of qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).

Qualified immunity is immunity from suit, rather than a defense to liability.  See id. at 228.  In order to defeat a motion for summary judgment based on qualified immunity, plaintiff must: 1) have alleged a violation of a constitutional right; 2) demonstrated that the alleged right is clearly established; and 3) raise a genuine issue of material fact as to whether defendants knew that the alleged conduct would have violated plaintiff's

- 11 -

clearly established right.  See Goff v. Bise, 173 F.3d 1068, 1072 (8th Cir. 1998).  Plaintiff is given the benefit of all relevant inferences, and if a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant[s are] not entitled to summary judgment on that ground."  Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000).  Plaintiff has alleged constitutional violations of the Fourth and Fourteenth Amendments.  Thus, construing the facts in a light most favorable to plaintiff, the issue is whether he has demonstrated that the alleged violations are clearly established rights, and if so, whether there is a genuine dispute as to whether defendants knew that their alleged conduct would have violated plaintiff's rights.  If plaintiff is unable to meet his burden, defendants are entitled to judgment as a matter of law.

**1.      Fourth Amendment**

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. am. IV.  The circumstances of a particular search will dictate whether the search is reasonable or unreasonable.  See Bell v. Wolfish, 441 U.S. 520, 558 (1979).  In analyzing whether a search is reasonable, the Court must balance "the need for the particular search against the invasion of personal rights that the search entails."  Id. at 559.

Defendants argue that searches of civilly committed individuals

should be analyzed under the standard applied to pre-trial detainees.  An involuntarily committed patient at a state institution is not a prisoner per se, but the same safety and security concerns arise out of the patient's detention.  See Revels v. Vinenz, 382 F.3d 870, 874 (8th Cir. 2004) (noting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001) (holding that an excessive force claim by involuntarily committed patient evaluated under the same standard as a claim brought by a pretrial detainee)).  The Court agrees with defendants that the most appropriate standard to apply, is that standard applied to pre-trial detainees.

The record in this matter reveals that there was a history of attempts by patients to conceal contraband, including cell phones and controlled substances, within the Program facility.  See Johnson Aff., ¶¶ 9, 18, 27, 28.  Prior to each facility-wide search, officials became aware of particularized evidence that cell phones were present in the facility; i.e., a cell phone statement was received by a patient in January, 2003, and a cell phone case was discovered in October, 2003.  Id., ¶¶ 6,17.  The evidence presented by defendants shows that reasonable, albeit unsuccessful, efforts were made to narrow the scope of subsequent searches to patients who may have possessed the cell phones.  The evidence also shows that there were serious security issues related to cell phone possession in Moose Lake.

Although the unclothed body searches involved a fairly substantial invasion of personal privacy, Program officials tried to minimize the degree to which patients' privacy was invaded. The searches were conducted in a hands-off manner in the relative privacy of a closed bathroom. Significantly, plaintiff alleges no facts to establish that he was searched in an abusive manner. Ultimately, balancing the invasion of personal privacy with the legitimate security concerns and the need to find any contraband cell phones, the Court concludes that both the January 2003, and the October 2003, searches were reasonable under the circumstances. See Bell, 441 U.S. at 559-60. As a matter of law, plaintiff has not met his burden to demonstrate that his Fourth Amendment rights were violated by the actions taken by defendants and it is recommended that his Fourth Amendment claims be denied.

### 2.     **Fourteenth Amendment**

As noted by defendants, and the Court above in footnote 2, Plaintiff does not explain the basis for his Fourteenth Amendment claim in his complaint. Plaintiff does, however, allege equal protection violations in his responsive pleading. Plaintiff specifically alleges that patients at Moose Lake committed under the SPP/SDP statute are treated differently from similarly situated patients committed under the Mentally Ill and Dangerous ("MID")

statute who reside at St. Peter.  See Mem. in Opposition, p. 20.  Defendants argue that: 1) because plaintiff did not raise this claim in his complaint, the Court should not consider it now; and 2) even if considered, plaintiff's equal protection claim fails as a matter of law.  Plaintiff made no attempt to amend his complaint to clarify the basis for his Fourteenth Amendment claim, and the Court is inclined to agree with defendants that the claim is improperly before the Court.  Nonetheless, plaintiff is a pro se litigant and thus entitled to a considerable degree of leeway, and the Court will consider plaintiff's claim.  Cf. Bracken v. Dormire, 247 F.3d 699, 702-03 (8th Cir. 1994), reh'g denied, May 10, (2001) (stating that the Eighth Circuit has a longstanding practice of construing pro se pleadings liberally).

To state an equal protection claim under the Fourteenth Amendment, plaintiff must, at a minimum, show that defendants failed to treat similarly situated individuals alike.  Abdullah v. Gunter, 949 F.2d 1032, 1037 (8th Cir. 1991) (citing Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985)).  Here, plaintiff cannot show that he was singled out for disparate treatment among other similarly situated individuals.  The record shows that plaintiff was treated exactly the same as every other individual committed under the SPP/SDP statute at the Moose Lake facility, and plaintiff's attempt to draw a distinction between the treatment of individuals

committed to St. Peter and those committed to Moose Lake is without merit.

Defendants direct the Court to Minnesota state court cases, which have recognized the difference between those individuals committed as SPP/SDP and those committed as MID.  See, e.g., McDeid v. O'Keefe, No. C0-03-177, 2003 WL 21525128 at *5 (Minn. Ct. App. 2003) (holding that individuals committed as MID are not similarly situated to individuals committed as SPP/SDP because the underlying statutory criteria are fundamentally different); cf. Hince v. O'Keefe, 632 N.W.2d 577, 585 n. 5 (Minn. 2001) (refusing to conclude that individuals committed as SPP/SDP meet the statutory definition for individuals committed MID).

The Court recognizes that officials at Moose Lake and St. Peter face different situations with respect to institutional security concerns, and that they must be accorded "deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell, 441 U.S. at 547.  The Court concludes that the searches undertaken by Program officials fell within the discretion reasonably accorded to such officials.  As a matter of law, plaintiff has not demonstrated a clearly established Fourteenth Amendment right, and it is recommended that his Fourteenth Amendment claims be dismissed.

**D.     Conclusion**

This Court agrees with every other judge in this District who has had occasion to consider the issues presented in this matter, and recommends that defendants' motion for summary judgment be granted and this case dismissed with prejudice.  Plaintiff has failed to carry his burden and demonstrate a clearly established constitutional right under either the Fourth or Fourteenth Amendment, and defendants are thus entitled to judgment on the basis of their qualified immunity.  Goff, 173 F.3d at 1072.  Because this Court concludes that defendants were entitled to qualified immunity, the Court need not reach defendants' remaining arguments.  Hunter, 502 U.S. at 228 (noting that qualified immunity is immunity to suit rather than a defense to liability).

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment [Docket No. 14] be **GRANTED** and that the Complaint be dismissed with prejudice.

Dated:  July 20, 2005

    s/ Jonathan Lebedoff

                                        JONATHAN LEBEDOFF
                                        Chief United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by August 8, 2005. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.